IN RE APPLICATION OF GUELI.

[Cite as *In re Application of Gueli,* 132 Ohio St.3d 39, 2012-Ohio-1907.]

*Attorneys—Character and fitness—Dishonesty and neglect of financial responsibilities require disapproval of application to take the bar exam— Applicant may reapply to take a later bar examination if he meets certain conditions.*

(No. 2011-1323—Submitted November 1, 2011—Decided May 3, 2012.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 426.

_____

**Per Curiam.**

{¶ 1} Jeffrey Vincent Gueli of Mayfield Heights, Ohio, was admitted to the Florida Bar in 2005. He has applied to register as a candidate for admission to the practice of law in Ohio and earlier applied to take the February 2009 and July 2011 bar exams. Citing Gueli's lack of honesty, his resistance to treatment for his alcohol dependency, and his failure to take responsibility for his own support, the Board of Commissioners on Character and Fitness recommends that we disapprove Gueli's character, fitness, and moral qualifications at present, but that he be permitted to apply to take the July 2014 bar examination if he meets certain conditions. Gueli objects to the board's recommendation, arguing that he has been successfully treated for depression and alcoholism for several years, that the board's concerns about his honesty and trustworthiness are unfounded, and that he is competent to practice law. We overrule Gueli's objections and adopt the board's recommendation to disapprove his pending application. He may, however, apply to take the July 2014 bar exam on certain conditions.

**Summary of Proceedings**

{¶ 2}   The admissions committee of the Cleveland Metropolitan Bar Association issued a report disapproving Gueli's character, fitness, and moral qualifications.   Gueli appealed the committee recommendation to the Board of Commissioners on Character and Fitness.   *See* Gov.Bar R. I(12).   The board appointed a panel to review Gueli's character, fitness, and moral qualifications, and the panel conducted a hearing on April 20, 2011.

{¶ 3}   The panel found that Gueli had been hired by the Office of the State Attorney in Florida in September 2005.   He resigned from that position in March 2006 after he was reprimanded for filing criminal charges without discussing the charges with his supervisor and then taking the case to the media when his supervisors did not agree with his actions.   Though he initially testified that he was unaware of any policy that would prohibit him from talking to the media, he later admitted that he had been advised of such a policy at his orientation.   He filed grievances against his former supervisors but later dismissed them.

{¶ 4}   Upon leaving the State Attorney's Office, Gueli commenced the private practice of law and apparently became increasingly delusional.   He claimed to believe that authorities had interfered with letters he had written to the press and that authorities had once laced his drink with a deadly narcotic.   He filed a lawsuit in federal court naming President George Bush, Florida Governor Jeb Bush, and Florida State Attorney Earl Moreland as defendants, alleging that they had violated the Racketeer Influenced and Corrupt Organizations Act and had denied his First Amendment rights by interfering with his mail.   He also wrote to the Federal Bureau of Investigation with irresponsible and unprofessional accusations.   The federal court granted the defendants' motions to dismiss Gueli's complaint despite Gueli's opposition to dismissal.   At the panel hearing, Gueli testified falsely that he had voluntarily dismissed the action.

**{¶ 5}** In November 2006, following the dismissal of his federal action, Gueli returned to Ohio from Florida. He was unemployed for several months, until he obtained temporary employment with Litigation Management. On his bar-exam application, he stated that he worked as an attorney, though he testified that he performed mostly paralegal tasks. He also stated that he held a temporary position as an attorney for American Electric Power, but then testified that he had not been functioning as a lawyer.

**{¶ 6}** In 2006 and 2007, the Florida Bar filed two complaints against Gueli based upon his federal lawsuit and an arrest for driving under the influence that Gueli claimed was orchestrated by the authorities because of his federal lawsuit. In responding to those complaints, Gueli sent inflammatory letters threatening to sue the bar. He failed to appear for two hearings, claiming that he saw no reason to attend them because he had been acquitted of the criminal charge. He also claimed that the hearings were 250 miles from his home, he had no access to a vehicle, and he could not take leave from his new job.

**{¶ 7}** In 2008, a Florida grievance committee recommended, and Gueli agreed to participate in, a diversion program with Florida Lawyers' Assistance, Inc. ("FLA, Inc."). Having returned to Ohio, however, Gueli, failed to submit to an FLA, Inc. evaluation by the specified date. He did, however, enter into a contract with the Ohio Lawyers Assistance Program ("OLAP"), which the Florida grievance committee eventually determined was an adequate substitute for the required FLA, Inc. program. Although Gueli claimed that the Florida grievance committee had closed Gueli's file, the recommendation of diversion conditioned that closure on successful completion of the FLA, Inc.—and consequently, OLAP—requirements.

**{¶ 8}** In early 2009, Gueli was evaluated by Dr. Brooke Wolf, an Ohio psychiatrist, who diagnosed him with major depression with psychotic features. While his first OLAP contract, executed in April 2009, was a mental-health

contract, it required him to refrain from using alcohol and other mood-altering drugs. Gueli's failure to take his medication as prescribed and his excessive drinking, which tended to retard the efficacy of his medications and fuel his delusions, interfered with his treatment. He participated in an intensive outpatient-treatment program for alcohol dependency from January through March 2010, but resisted the treatment.

{¶ 9} As a result of Gueli's continuing issues with alcohol, in June 2010, he entered into a second OLAP contract to address this chemical dependency. The contract required him to refrain from using all mood-altering substances, including alcohol, to submit to random alcohol screening, participate in Alcoholics Anonymous ("AA"), and obtain an AA sponsor within two weeks of signing the contract. Gueli did not comply with this contract. He did not attend AA meetings regularly, he waited approximately six months to obtain an AA sponsor, he failed two of his six random alcohol screenings, and he missed others because he failed to call his OLAP monitor, Paul Caimi, at least once a week.

{¶ 10} When outpatient treatment and AA failed to work, Caimi, Dr. Wolf, and a licensed independent social worker, Paul Hunkins, recommended inpatient treatment. Gueli refused to enroll in inpatient treatment, citing his inability to pay and his unwillingness to seek treatment even if it were free. In an e-mail to Caimi, Gueli claimed that he was drinking no more than ten alcoholic beverages a week and that he did not have an illness that required hospitalization. Although Gueli knew that both Hunkins and Dr. Wolf had recommended residential treatment, he testified that Dr. Wolf and Hunkins opposed it. Dr. Wolf and Hunkins contradicted Gueli's testimony, stating that they concurred with the recommendation for inpatient treatment.

{¶ 11} As Caimi pushed for inpatient treatment, Gueli responded with a letter threatening to sue Caimi. Gueli's conduct—including his refusal to seek inpatient treatment, his failure to check in daily to see whether he was scheduled

4

for a urine test, his failure to regularly attend AA meetings, and his continued drinking—led to the termination of his OLAP contract in August 2010. When questioned about the effect the termination of his OLAP contract had on the proceedings involving his Florida license, Gueli testified that he believed he had informed the appropriate authorities. He did not, however, provide the admissions committee with a copy of any letter he had sent to the Florida bar or received on this matter, flouting the committee's previous request for all documents pertinent to the Florida case.

{¶ 12} The panel states that after the hearing, Gueli provided a copy of a letter dated September 4, 2010, that he supposedly sent to the Florida bar notifying it of the termination of his OLAP contract. The panel questions the authenticity of this unsigned letter and disputes the accuracy of the information contained in it. In the letter, Gueli apparently reported that (1) his treatment for his depression, paranoid delusions, and alcoholism was going well, (2) he had regularly attended AA meetings since February 2010, (3) he had completely abstained from alcohol except for a brief relapse in March 2010, and (4) Caimi had irrationally demanded that he obtain inpatient treatment and then terminated his OLAP contract because Gueli refused. We cannot confirm that Gueli made these representations because this letter has not been preserved in the record. But the evidence does demonstrate that Gueli attended only six AA meetings in August 2010 (when he was required to attend at least three per week), attended no meetings in September or October 2010, and reported to Caimi in August 2010 that he was drinking up to ten alcoholic drinks a week. At the hearing, Gueli admitted that he continues to drink a low-alcohol beer, even though his treatment professionals recommend that he avoid all alcohol. The combination of these failures led to the termination of Gueli's OLAP contract.

{¶ 13} The panel also expressed grave concern that Gueli had not been honest with his treatment professionals. Those professionals testified and their

notes reflect that Gueli told them he was attending AA meetings when he was not. Dr. Wolf opined that Gueli could practice law as long as he continued to take his medications and participate in therapy and psychiatric sessions, though she expressed concerns about his lack of honesty. Hunkins acknowledged that Gueli's lack of honesty reflected poorly on his character and would make him an inappropriate candidate for the bar. Though Dr. Wolf voiced concern that Gueli's reports to and about her were not accurate, she did not believe that his dishonesty adversely reflected on his ability to comprehend and make reasonable judgments or, consequently, on his ability to practice law. In fact, she declared that if lying about the number of AA meetings attended made an attorney unfit to practice law, a lot of attorneys would be disbarred. The panel rejected Dr. Wolf's view, finding that she devalued the critical importance that truth and honesty play in the profession.

{¶ 14} In addition to Gueli's alcohol dependency, the panel expressed its concern about his financial responsibility. He has lived with and been totally supported by his parents for several years. Except for a few short periods of restaurant work, from which he has been terminated, he has been unemployed. And he has failed to present any evidence that he has made significant efforts to obtain employment. Moreover, the record shows that he has credit-card and other debt of $18,500 plus $85,000 in student-loan debt, all in default. Gueli has no plans to repay his debt or to support himself.

### Recommendation

{¶ 15} The panel found that Gueli's paranoia and delusions appear to have abated as a result of medication and psychiatric care, which Gueli will need for the rest of his life. While Gueli's alcohol dependency, his steadfast resistance to treatment, and his failure to take responsibility for his financial affairs were of serious concern, the panel was most troubled by Gueli's inability to know or tell the truth. Not only was Gueli not truthful with Dr. Wolf, Hunkins, and Caimi, but

6

on numerous instances, his testimony was inaccurate. Gueli, however, stood by his statements until challenged by incontrovertible evidence to the contrary. The panel questioned whether Gueli knew that he was creating his own facts, whether he was just careless, or whether his mental-health issues contributed to an altered perception of reality. Regardless of the cause, the panel found that at present, Gueli "is not a person upon whom clients, courts, adversaries, and others can rely."

{¶ 16} Citing Gueli's significant deficiency in honesty, trustworthiness, and reliability, the panel recommends that his character and fitness be disapproved at this time. *See* Gov.Bar R. I(11)(D)(3). The panel recommends, however, that Gueli be permitted to apply to take the July 2014 bar examination. In the interim, the panel recommends that Gueli (1) continue his treatment with Dr. Wolf and Hunkins, (2) enter into a three-year OLAP contract, and (3) fully comply with all the terms and conditions of that OLAP contract, as well as the recommendations of OLAP and his treating professionals.

{¶ 17} The board has unanimously adopted the panel's findings of fact and recommendations, except that the board would require Gueli to submit a new application to register as a candidate for admission to the practice of law no sooner than November 1, 2013, followed by an application to take the July 2014 bar exam.

### Disposition

{¶ 18} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness,

diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id*.

{¶ 19} In determining that the applicant has not proved that he possesses the requisite character, fitness, and moral qualifications, the board considered the factors set forth in Gov.Bar R. I(11)(D)(3) and (4). The board expressed concern regarding the applicant's alcohol dependence and his resistance to recommended treatment, his neglect of his financial responsibilities, and his lack of candor in the admissions process. *See* Gov.Bar R. I(11)(D)(3)(b), (h), and (k).

{¶ 20} Gueli objects to the board's findings of fact and its recommendation that his character and fitness be disapproved at this time. He argues that he has been a member in good standing of the Florida Bar and that while he has had "some issues with depression and alcoholism," they have been successfully treated. He challenges the board's finding that he lacks honesty, claiming that AA attendance is "not critically important." Gueli contends that he has no problems knowing or telling the truth and that he has been responding well to his treatment for alcoholism. He characterizes the board's recommendation as "irrational and unfair" and asks us to admit him to candidacy for the practice of law in Ohio.

{¶ 21} Having thoroughly reviewed the record, however, we conclude that Gueli's objections are without merit. Not only are the board's findings supported by the testimony and evidence adduced at the hearing, but Gueli's objections corroborate the board's findings that he creates his own facts, which differ significantly from reality. He has demonstrated a disturbing lack of candor in the admissions process and continues to minimize the severity of his alcohol dependence, while overstating the progress he has made in his treatment program.

{¶ 22} Based upon the foregoing, we agree that the applicant has failed to prove that he currently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law. We therefore adopt the

board's findings of fact and disapprove Gueli's application to register as a candidate for admission to the practice of law. Gueli may submit a new application to register as a candidate for admission to the practice of law in Ohio no sooner than November 1, 2013, and may apply to take the July 2014 bar examination if he (1) continues treatment with Hunkins and Dr. Wolf and follows their recommended treatment, (2) enters into a new three-year OLAP contract, and (3) fully complies with all its terms and conditions as verified by OLAP.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

Jeffrey Vincent Gueli, pro se.

Tucker Ellis & West, L.L.P., and Susan Audey, for Cleveland Metropolitan Bar Association.

_____